**BRENT, Plaintiff-Appellee, v. ADVANCE SCALE MANUFACTURING COMPANY et, Defendants-Appellees, HOWARD, d. b. a. JESS HOWARD ELECTRIC CO., Defendant-Appellant.**

Ohio Appeals, Second District, Franklin County.

No. 4712. Decided January 25, 1952.

260

Richard G. Clark, L. P. Henderson, Columbus, for Milton L. Farber, Receiver, defendant-appellee.

William N. Postlewaite, Columbus, for Brown Steel Co., General Creditor.

Hale & Kincaid, Columbus, for Jesse E. Howard, defendant-appellant.

## OPINION

By THE COURT.

Submitted upon motion of Milton L. Farber, Receiver, and defendant-appellee herein, seeking an order dismissing the appeal upon law and fact for the reason that the Court is without jurisdiction to entertain such an appeal.

The record reveals that Milton L. Farber is the duly appointed, qualified and acting receiver of the Advance Scale Manufacturing Company of Columbus, a corporation; that the defendant-appellant is a creditor and claims his preference over other creditors by reason of a certain chattel mortgage allegedly executed by certain officers of the corporation and delivered to him on certain equipment belonging to said corporation. The order appealed from arose as the result of an application filed by the receiver in the Court below, in which he prayed for instructions relative to the allowance or disallowance of the claim of defendant-appellant as a preferred creditor under his chattel mortgage. Upon motion of the

defendant-appellant the Court ordered him to be made a party defendant and he then proceeded to set up his claim as a preferred creditor under the mortgage by way of answer and cross-petition. The issues raised thereupon were tried to the Court, which found the mortgage to be invalid as against the receiver and general creditors and ordered the receiver to allow the claim of defendant-appellant only as a general claimant. It is from this order that the defendant-appellant now prosecutes this appeal.

The law seems to be well established in this state that ancillary orders in a receivership, if appealable, are appealable only on questions of law. Corwin v. Automatic Gas & Stoker Company, 37 Abs 293; Hudson v. Hoster, 37 Abs 240; Roberts v. Hall, 10 Abs 713. The question, therefore, presented is the nature of the order from which the appeal was taken, that is, whether or not it was merely incidental or ancillary in character. It appears to us that the issues of the case here presented are distinguishable from those cited supra. In the Corwin case, supra, the question presented was for the allowance or disallowance of an unsecured claim. In the Hudson case the order was one made in a partition action allowing attorney fees, which was held to be incidental to the proceeding and reviewable only on questions of law.

In the case of Roberts v. Hall, supra, the question presented involved the rights of intervening parties making claim to specific property held by the receiver. The facts of each of these cases are distinguishable from the facts of the case under review in that in the case at bar the issue before the Court was the determination of the validity and priority of a mortgage on property held by the receiver. Before and since the amendment of 1912 of Section 6, Article IV, Ohio Constitution, the appealable character of a case on questions of law and fact has been held determinable from the pleadings and issues made thereby. 2 O. Jur. Appellate Review, Sec. 38, p. 101. It is the nature of the action and not the form of the judgment rendered that determines whether a case is appealable on law and fact. The issues in the trial court were made by the application of the receiver and the answer and cross-petition of the defendant-appellant. The case was one in equity and neither party had a right to demand a jury trial. Webb, Receiver, v. Stasel, Receiver, 80 Oh St, 122, syllabus:

"An action brought by leave of court against a receiver for the allowance of a claim to be paid in due course of administration of the property in his hands is not an action for money only, and neither party is entitled to a jury for the trial of issues of fact arising therein. It being a civil action

within the original jurisdiction of the court of common pleas either party may under favor of §5226 GC, Revised Statutes, appeal from the judgment of that court to the circuit court."

The rights of the defendant-appellant in the property held by the receiver could be determined only in a separate action upon being given leave of court or by determination made in the case in which the receiver was appointed. The facts, issues and trial in a separate case would have been the same as those presented in this appeal. The defendant-appellant should not be penalized for the procedure adopted in this matter.

We find that the question presented here was passed upon several times by the courts of this state prior to the constitutional amendment of 1912.

In Strass et al., v. The Lambs Inn Co., et al., 16 O. C. C. (N. S.), 486, the syllabus provides:

"A claim to recover property in the hands of a receiver, made and determined in an equitable action in which the receiver was appointed, is appealable."

Also, in the case of **Windhurst v. Ford, 22 Abs 71**, the fifth syllabus provides:

"A suit in Common Pleas Court to compel the allowance of a preferential claim on property in the hands of an assignee for the benefit of creditors is an action in chancery and appealable."

In **Le Maistre, Admr. v. Clark, 142 Oh St 1**, the Court lays down the following primary tests for an appeal on law and fact:

(1) There must be a final order.

(2) The case must be one in chancery.

(3) There must be a trial of factual issues in the court below.

We believe these requisites have been met in the case at bar and the motion will be overruled.

HORNBECK, PJ, WISEMAN and MILLER, JJ, concur.

## LAW APPEAL FROM COMMON PLEAS COURT

No. 4712. Decided November 25, 1952.

Richard G. Clark, L. P. Henderson, Columbus, for Milton L. Farber, Receiver, defendant-appellee, and for plaintiff-appellee.

William N. Postlewaite, Columbus, for Brown Steel Co., General Creditor.

Hale & Kincaid, Columbus, for Jesse E. Howard, defendant-appellant.

## OPINION

By THE COURT.

This is a law appeal from the judgment of the Common Pleas Court finding the chattel mortgage in issue herein to be void and also constituting a preference against the rights and interests of the creditors of the corporation.

The record discloses the Advance Scale Manufacturing Company, a corporation, is in receivership; that it has outstanding a chattel mortgage on two of its pieces of machinery given

to a Mr. Howard, doing business as the Jess Howard Electric Company. The receiver has filed a motion for instructions as to the legality of the mortgage, it appearing to have been given without the approval of the board of directors of the corporation.

The case comes to us on the record as made in the Common Pleas Court which reveals the corporation has 190 shares of stock outstanding, 118 being owned by Otto Brent who is the president and general manager, and 36, by R. F. Otto, treasurer: that the president entered into a contract with Mr. Howard for the installation of certain electrical equipment; that as part payment for the same a company note was given on February 26, 1951, in the sum of $1590.63. When the same became due three months later it was not paid, and further work having been done full payment was demanded by Mr. Howard, for his protection, threatening court action if his demands were not met. After several weeks of discussion it was decided by the president and treasurer to issue the company's note for the full amount and secure the same by chattel mortgage on the two pieces of machinery. This was done on June 9, 1951, without action being taken by the board of directors, which counsel for Howard urges was not necessary, asserting that the officers acted within their implied powers; that the corporation ratified the act and also that the corporation or its successors was estopped to deny the validity of the mortgage. The mortgage was signed for the company by the two previously mentioned officers.

For a determination of the issues a further examination of the evidence becomes necessary. We find that at the time the mortgage was given there had been a course of dealing between these officers and Howard for approximately six months, but this was the first one in which a chattel mortgage was involved; that there had been no holding out to Howard by the corporation, its officers, directors or shareholders, which might have indicated they had authority to execute a mortgage on behalf of the corporation other than that of the two officers whose acts are now questioned.

We find further that these officers knew they had no such authority for action was sought from the board to issue a chattel mortgage to one Irving and Gilbert Echt, the resolution having been adopted on May 24, 1951, only several weeks prior to the issuing of the mortgage in question. Under these facts we think the case of **Miller v. Wick Building Co., 154 Oh St 93**, is controlling, **paragraphs 4** and **5** of the syllabus providing:

"Where a party seeks to hold a principal on a contract

made by an agent and, to establish the power of the agent to make the contract, relies entirely on the implied authority of the agent and shows no express authority or reliance on the agent's apparent authority, there can be no recovery against the principal if the agent knew that he had no authority to make the contract for the principal.

"Ordinarily, the question of whether such agent believed that he had authority to make the contract is a question of fact for determination by the jury. However, where the evidence is such that reasonable minds could not conclude that the agent so believed, the court must decide, as a matter of law, that the agent did not so believe."

We therefore hold the officers did not have implied authority to issue the mortgage.

It is next urged the corporation received the benefit of their acts by securing additional time in which to make payment, and therefore it may be said to have ratified the same, but ratification cannot take place until after knowledge of the act has become known to the corporation, after which it has reasonable time within which to disaffirm. **Indemnity Co. v. Shovel Co., 112 Oh St 136.** We are of the opinion the corporation did not acquire knowledge of the unlawful act because of the fact that Brent and Otto knew of it, for this knowledge was not acquired by them while acting as directors or acting within the scope of their employment. On the subject of knowledge of directors which will bind the corporation, **10 O. Jur., 765, Sec. 564** provides:

"The directors are the ones charged with the conduct and management of the business of the corporation, but they ordinarily can only bind the corporation when acting as a board, unless the board has delegated special authority to one of its members to act for the corporation. The question then arises as to how far notice to a single director, or to the directors as individuals, affects the corporation. No doubt the knowledge of a single director, obtained by him while acting for the corporation, will be imputed to the corporation. But it is necessary, in the absence of statutory provision, in order to affect the corporation with knowledge of a fact on the part of one of its directors, that the director should have acquired such knowledge while acting officially in the business of the corporation—under some special authority conferred on him, other than that which he would possess as merely one of the directors. In other words, knowledge acquired by a single director, when not officially engaged for the corporation, is not notice to the corporation."

Mr. Stubbs, the third and only other director of the cor-

poration, testified he did not know of the mortgage until about the time of the appointment of the receiver. We think that the doctrine of equitable estoppel can have no application for the same reasons applicable to ratification, supra. We must concur also with the conclusion of the trial court that the mortgage was issued to Howard in an attempt to prefer him as a creditor in violation of §11104-5 GC. These sections provide:

"* * * mortgage * * * made in trust or otherwise, by a debtor or debtors, * * * and every judgment suffered by him or them against himself or themselves in contemplation of insolvency and with a design to prefer one or more creditors to the exclusion in whole or in part of others, and a sale, conveyance, transfer, mortgage or assignment made, or judgment procured by him or them to be rendered, in any manner, with intent to hinder, delay or defraud creditors, shall be void as to creditors of such debtor, or debtors at the suit of any creditor or creditors."

**Sec. 11105 GC:**

"The provisions of the next preceding section shall not apply unless the person or persons to whom such sale, conveyance, transfer, mortgage or assignment is made, knew of such fraudulent intent on the part of such debtor or debtors, * * *."

Our examination of all the testimony discloses, we think, that Howard knew of the condition of the corporation at the time the demands were being made, Mr. Otto having testified as follows at page 15 of the record:

"Q. Now, Mr. Otto, on that date when Mr. Howard was out there, was there any discussion either that day or prior to that with Mr. Howard with reference to the financial condition of the company?

"A. Yes; Mr. Howard knew that we were in bad shape financially. It was obvious because we couldn't pay his bill.

"Q. Did you talk with Mr. Howard with reference to the company possibly folding up or going out of business?

"A. I think it was generally understood that there was a possibility. However, we did have some deailngs going on, which I stated before, that we might be able to sell the corporation.

"Q. Did you discuss with Mr. Howard the proposition of taking care of him rather than all creditors, or any other creditors in the event the company did go out of business?

"A. Well, we did feel that Mr. Howard, inasmuch as he did put all this work in, and he had a lot of material in, that he should as much as possible be preferred as to in case something happened he could be taken care of.

"Q. And was that the reason, or at least one of the reasons, why you executed this chattel mortgage to him?

"A. Yes, sir."

The condition of the corporation is further exemplified by the fact that on June 13, only four days after the execution of the mortgage, Otto Brent, president and general manager, walked out thereby abandoning his duties and position therein which resulted in the appointment of a receiver several weeks later.

Under the facts presented we hold the mortgage to be void, having been given in violation of §11104-5 GC. Counsel for the appellant have cited numerous cases to support their views, but the facts of none, we feel, are on all fours with those in the case at bar. Our judgment will be the same as that of the Common Pleas Court.

HORNBECK, PJ, WISEMAN and MILLER, JJ, concur.